UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PSI MARINE, INC.,

    *Plaintiff,*

v.

SEAHORSE DOCKING LLC,

    *Defendant.*

                             /

Case No. 1:22-cv-10611
District Judge Judith E. Levy
Magistrate Judge Patricia T. Morris

## REPORT AND RECOMMENDATION

**I. RECOMMENDATION**

For the following reasons, I **RECOMMEND** that the Court **DENY** Defendant's motion to dismiss (ECF No. 9).

**II. REPORT**

    **A. Factual Background**

This is a civil action for trademark infringement brought under 15 U.S.C. § 1121 (October 30, 1998). On March 22, 2022, Plaintiff PSI Marine, Inc. ("PSI Marine"), a Michigan corporation located in Saginaw, Michigan filed suit alleging trademark infringement by Defendant Seahorse Docking LLC ("Seahorse"), located in Manchester, Connecticut.

    PSI Marine states as follows:

> This Court has personal jurisdiction over Seahorse because, *inter alia* Seahorse has conducted and continues to conduct business in this judicial district and, upon information and belief, has engaged in

1

>activities related to PSI Marine's claims of federal trademark infringement that establish minimum contacts with the state of Michigan, including having committed acts of trademark infringement in this judicial district. Seahorse also operates a fully interactive website at seahorsedocking.com through which products associated with the offending mark and associated with the false advertising can be purchased.

PSI Marine makes the following factual allegations. PSI Marine sells mooring products to be used for docks and watercraft under the trademark TIDESLIDE. (ECF No. 1, PageID.3, ¶ 6). PSI Marine's principal, Mark Baluha is the exclusive licensee of TIDESLIDE. (*Id*.). Baluha registered the TIDESLIDE mark on November 4, 2003, consistent with the requirements of the Lanham Act, 15 U.S.C. § 1065 2018). (*Id*., ¶ 9). PSI Marine has invested "considerable" time and funds in promoting TIDESLIDE products and has made "considerable sales of products" under the mark. (*Id*. ¶¶ 10-11). PSI Marine operates a website under URL www.tideslide.com; maintains a presence on Facebook and Instagram; and attends trade shows using the TIDESLIDE mark and promoting TIDESLIDE products. (*Id*. at PageID.3-4, ¶¶ 10-12). As a result, PSI Marine has "acquired value, name and brand recognition, and goodwill" in the use of the TIDESLIDE mark. (*Id*. at PageID.4, ¶ 14.

PSI Marine alleges further that Defendant Seahorse "owns and operates a fully interactive website, www.seahorsedocking.com that "advertises and offers certain products for sale to the general public within the United States, including this District" allowing the general public to search products that are offered for sale on the website and purchase and arrange for shipment of the products through a shopping cart feature. (*Id*., ¶¶ 15-16). Among the Seahorse's online offerings are "SEA SLIDE" products using the SEA SLIDE

mark in connection with their promotion of "Mooring Products for Docks and Watercraft." (*Id*. at PageID.4-5, ¶ 17). Seahorse's website also offers the "Tide Right" mark in connection with the Mooring Products for Docks and Watercraft. (*Id*., ¶ 18). PSI Marine states that "Seahorse has mimicked and adopted the look and feel of [PSI Marine's] social media, booth displays and various literature, such as consumer price lists. (*Id*., ¶ 19).

Count I of PSI Marine's complaint states that that Seahorse has willfully and deliberately infringed its trademark registration of TIDESLIDE with the name SEA SLIDE. (*Id*. at PageID.6-7, ¶¶ 21-29). Count II states that Seahorse used and continues to use interstate commerce to advertise, promote, distribute, and offer for sale SEA SLIDE products and that the SEA SIDE name is used "on identical or at least related goods to those sole by PSI Marine" under the TIDESLIDE mark. (*Id*. at PageID.8-9, ¶¶31-39). Count III states that Seahorse falsely advertises on its website that its Tide Right product contains a "'patented self-adjusting fender and clear.'" (*Id*. at PageID.9, ¶ 41) quoting (*Id*. at PageID.25-26, ¶¶ 41-48). Count IV states that Seahorse willfully and deliberately states falsely that if "offers the only adjustable Self-Leveling Docking System" while in fact, PSI Marine offers a self-leveling docking systems." (*Id*. at PageID.11, ¶¶ 50-54). PSI Marine also alleges violations of the Michigan Consumer Protection Act ("MCPA"), M.C.L. § 445.903; unfair competition; and unjust enrichment. (*Id*. at PageID.11-13, ¶¶ 55-60, 61-65, 66-70).

PSI Marine requests that Seahorse be preliminarily and permanently enjoined from the following: promoting or selling products infringing on the TIDESLIDE mark; claiming that its products are patented; and claiming that it offers the only adjustable self-leveling

docketing system. (*Id*. at PageID.15-16). PSI Marine also requests monetary damages, costs, and pre-judgment and post-judgment interest. (*Id*. at PageID.16).

Appended to Defendant's motion as Exhibit A is the Declaration of Carmen Martocchio, the owner of Seahorse Docking LLC. The Declaration states that Seahorse is a limited liability company under the laws of the State of Connecticut and has its principal place of business in Connecticut. (ECF No. 9-1, PageID.74). Seahorse neither owns, operates, nor maintains any facilities, offices, telephone listings, or mailing addresses in the State of Michigan. (*Id*. at PageID.74-75). Seahorse does not have any employees who live or work in Michigan, and is not licensed or registered to do business in Michigan. (*Id*. at PageID.75). It has not appointed a registered agent for service of process in Michigan, and has not paid taxes in the State of Michigan. (*Id*.). The Declaration states that Seahorse "does not have substantial, ongoing business contacts within the State of Michigan." (*Id*.).

The Declaration states that Seahorse has not sold its SEA SLIDE or Tide Right products in Michigan. And it "has not specifically directed any advertisements for the SEA SLIDE or TIDE RIDE products to customers or distributors located in the State of Michigan." (*Id*. at PageID.76). As reflected in Appendix 1 to the Declaration, as of April 26, 2022, Seahorse has sold a total of two items to customers in Michigan, neither of which was for SEA SLIDE or TIDE RIGHT products. (*Id*. at PageID.77). The Declaration states that the majority of Seahorse's sales have been made to customers outside the State of Michigan. (*Id*.).

In response, Plaintiff PSI Marine has submitted the declaration of Mark Baluha, its owner, who states that his company is domiciled in Michigan. (ECF No. 13, PageID.100).

4

He states that PSI Marine is the exclusive licensee of the registered trademark TIDESLIDE. (*Id*.). He states that Defendant's website "offers to sell goods under the infringing SEA SLIDE and TIDE RIGHT. (*Id*. at PageID.101).

Exhibit A to Baluha's declaration is a portion of Seahorse's website describing its SEA SLIDE product, including pricing information. It also has ordering information ("Add to cart)" and indicates that payment may be made with GPay and Shop Pay, with a link to "more payment options." (ECF No. 13-2, PageID.105-106). It also has links to Seahorse's terms of service and refund policy. (*Id*. at PageID.107).

Exhibit B to Baluha's declaration is a portion of its website describing its TIDE RIGHT product, including pricing and ordering information. It states, "The standard beam length is 10 feet. If you need a larger size, please select that option." It has an ordering link ("Add to cart") and indicates that the product can be purchased through G Pay or Shop Pay, with another link to "more payment options." It has an interactive link ("Ask a question") for potential consumers to obtain more information. (ECF No. 13-3, PageID.109-110). It also has links to Seahorse's terms of service and refund policy. (*Id*. at PageID.112).

Exhibit C to Baluha's declaration is a portion of Seahorse's website that advertises a "Memorial Day sale," offering a $100 discount on any purchase of $1000 or more that will be "automatically applied at checkout." (ECF No.13-4, PageID.113). It states in oversize boldface type, "**CONTACT US,**" and lists a contact telephone number. (*Id*.). It also indicates that Seahorse may be contacted by email, and contains a section for the

potential customer's name, email address, and message. (*Id*.). It has a link to Seahorse's terms of service and refund policy. (*Id*. at PageID.115).

### B. Legal standards

Defendant moves for dismissal of PSI Marine's complaint under Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2) allows defendants to move for dismissal for lack of personal jurisdiction. When faced with a "properly supported 12(b)(2) motion," district courts must choose between one of three procedural alternatives. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir, 1991). Specifically, the Court may (1) "rule" on the parties' "written submissions alone," (2) "permit discovery in aid of the motion," or (3) "conduct an evidentiary hearing on the merits of the motion." *Serras v. First Tenn. Bank Nat. Ass'n.*, 875 F.2d 1212, 1214 (6th Cir. 1989). This decision is well within the district court's discretion. *Theunissen*, 935 F.2d at 1458; *see also MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017).

The plaintiff carries the burden of establishing personal jurisdiction. *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 502 (6th Cir. 2020). The extent of the plaintiff's burden, however, depends on the court's method for resolving the motion. *Id.* at 505 (citing *Serras*, 875 F.2d at 1214). Where the Court decides to resolve the motion on "written submissions alone," the plaintiff need only make a prima facie showing of personal jurisdiction, and a plaintiff can make this showing "merely through the complaint." *Schnieder v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (internal quotation marks omitted) (quoting *Serras*, 875 F.2d at 1214); *Malone*, 965 F.3d at 505. The Court

6

may also "rely on the affidavits alone." *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017) (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). To determine whether a Plaintiff has established a prima facie showing, the court must construe all facts "in the light most favorable to the plaintiff"—any factual disputes are "irrelevant." *Theunissen*, 935 F.2d at 1459; *Malone*, 965 F.3d at 505.

If the Court rules exclusively on the parties' written submissions, then the court's inquiry ends after determining whether the Plaintiff has made a prima facie showing. *See Malone*, 965 F.3d at 505. But if the Court instead chooses to conduct an evidentiary hearing, it must then employ a burden shifting framework which takes the defendant's factual allegations into consideration. *Id.* at 504–05. Under this framework, the plaintiff retrains the initial burden of establishing a prima facie showing of personal jurisdiction. *Id.* (citing *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)). Once the plaintiff makes this showing, the burden shifts to the defendant to "properly" support his or her motion "with evidence." *Id.* (citing *Theunissen*, 935 F.2d at 1458). If the defendant can provide evidence in support of its position, the burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the court has personal jurisdiction over the defendant.[1] *Malone*, 965 F.3d at 504; *see also Schneider*, 669 F.3d

---

[1] The Sixth Circuit has not clearly articulated the appropriate standard where the district court allows discovery, but nonetheless resolves the 12(b)(2) motion without a hearing. In *Dean v. Motel 6 Operating L.P.*, the Court stated that generally, a prima facie standard applies in these situations; however, if there is no dispute "as to the facts or to the extent of discovery," then the plaintiff must prove personal jurisdiction by a preponderance of the evidence, even if the court does not hold a hearing. 134 F.3d 1269, 1272 (6th Cir. 1998). The Sixth Circuit has since called this language into question, recognizing it as dicta, and citing numerous cases where the Court ignored *Dean*'s exception to the prima facie standard. *Schneider*, 669 F.3d at 698 & n.7. Nonetheless, the Court has never reached a definitive holding, and the appropriate

7

693, 697. At this stage, the plaintiff "may no longer 'stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.'" *Malone*, 965 F.3d at 504 (quoting *Theunissen*, 935 F.2d at 1458).

Here, I suggest that the Court need not conduct a hearing or allow for additional discovery. Accordingly, PSI Marine need only establish a prima facie case of personal jurisdiction.

**C.     Analysis**

In favor of its argument for dismissal under Rule 12(b)(2), Defendant Seahorse argues that it is not subject to the Court's general jurisdiction because it is not "at home" in Michigan, and is not subject to the Court's specific jurisdiction because it does not have sufficient "suit-related" contacts with this District. (ECF No. 9, PageID.57). Defendant states that it has not sold the products identified in the Complaint to customers in Michigan and that the act of maintaining a commercial website, without more, is not sufficient to show specific jurisdiction over an out-of-state defendant. (*Id*. at PageID.57-58) (citing *Wicked Grips LLC v. Badaan et al.*, No. 20-12773, 2021 WL 3783068 (E.D. Mich. July 21, 2021) (report and recommendation adopted at *Wicked Grips LLC v. Badaan et al.*, No. 20-CV-12773, 2021 WL 3773189 (E.D. Mich. Aug. 24, 2021)); (ECF No. 9). Appended to the motion is the declaration of Carmen Martocchio, owner of Seahorse, stating that Seahorse does not regularly transact business with customers or businesses in Michigan

---

standard in these situations remains an "unsettled issue." *Stolle Mach. Co., LLC v. RAM Precision Industries*, 605 F. App'x 473, 480 n.5 (6th Cir. 2015).

and does not have "substantial, ongoing business contacts" within Michigan. (*Id*. at PageID.75, ¶¶ 13-14).

In response, PSI Marine contends that personal jurisdiction exists, noting that the Seahorse website allows visitors to purchase products, enter a shipping location where the infringing mark will be shipped, solicits email addresses from its prospective customers, invites viewers to follow Seahorse on social media, and "does not in any way restrict the sale of its goods geographically. (ECF No. 12, PageID.87). PSI Marine argues that Seahorse purposefully availed itself of acting in Michigan, noting that the failure to show a completed transaction in Michigan is not dispositive. (*Id*. at PageID.92-93). PSI Marine contends that it has been harmed by Seahorse's attempt to capitalize on PSI Marine's development and promotion of the TIDESLIDE products.

In reply, Seahorse reiterates that its operation of a website, without more, does not establish personal jurisdiction out an out-of-state defendant. (ECF No. 14, PageID.119). Seahorse disputes that it deliberately copied the TIDESLIDE trademark, contending that "SEA SLIDE" did not "literally copy" the TIDESLIDE mark. (*Id*. at PageID.121).

Personal jurisdiction is a court's power to exercise authority over a defendant; without it, a court cannot adjudicate a claim against an individual defendant. 4 Charles Alan Wright et al., *Federal Practice and Procedure* § 1063 (4th ed. 2022) § 1063; *Jurisdiction*, Black's Law Dictionary (11th ed. 2019). To hold personal jurisdiction over a defendant, a federal court must be authorized by statute to issue summons for that defendant. *See Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) (citing *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444–45 (1946));

9

*Bridgeport Music, Inc. v. Still N the Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003). However, even if the court is authorized to effect service on a defendant, its exercise of personal jurisdiction also must not deny the defendant due process. In other words, "[t]o assert personal jurisdiction over a defendant, a court with subject matter jurisdiction pursuant to either 28 U.S.C. § 1331 or § 1332 must find that (1) defendant is amenable to service of process under the forum state's long-arm statute, and (2) the exercise of personal jurisdiction will not deny defendant due process." *J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294, 299-300 (N.D. Ohio Mar. 16, 2021)(collecting cases).

In *Kerry Steel, Inc.*, *v. Paragon Industries, Inc.*, 106 F.3d 147, 149 (6th Cir. 1997), the Court described the two methods by which a federal court could acquire personal jurisdiction over a defendant:

> Personal jurisdiction comes in two flavors: 'general' jurisdiction, which depends on a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant, and 'specific' jurisdiction, which exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum.

### 1. General Jurisdiction

M.C.L. § 600.711 sets forth three bases upon which a Court can establish general personal jurisdiction over a corporation:

> "The existence of any of the following relationships between a corporation and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise general personal jurisdiction over the corporation and to enable such courts to render personal judgments against the corporation.
>
> (1) Incorporation under the laws of this state.

(2) Consent, to the extent authorized by the consent and subject to the limitations provided in section 745.1

(3) The carrying on of a continuous and systematic part of its general business within the state.

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 317 (1945)).

Defendant Seahorse does not meet the strict requirements of M.C.L. § 600.711, and does not have the "continuous and systematic" affiliation with the State of Michigan that would support a finding of general jurisdiction. Indeed, Plaintiff does not argue that there is general personal jurisdiction over Seahorse, and relies solely on its claim of specific jurisdiction.

### 2. Specific Jurisdiction

In *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012), the Sixth Circuit held that "[f]or specific jurisdiction to exist in a diversity case, two factors must be satisfied: the forum state long-arm statute, and constitutional due process." The Court added, "It is not necessary to decide if due process has been satisfied if the requirements of the long-arm statute are not met." (citing *Green v. Wilson,* 455 Mich. 342, 350-351 (1997)).

Michigan's long-arm statute for corporations, M.C.L. § 600.715, provides as follows:

> Sec. 715. The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
>
> (1) The transaction of *any* business within the state.
>
> (2) The doing or causing *any* act to be done, or consequences to occur, in the state resulting in an action for tort.
>
> (3) The ownership, use, or possession of any real or tangible personal property situated within the state.
>
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
>
> (5) Entering into a contract for services to be performed or *for materials to be furnished in the state* by the defendant.

(Emphasis added).

Defendant Seahorse falls within three provisions of this statute. First, Seahorse concedes that it has sold two of its products in the State of Michigan, satisfying ¶ (1). It does not matter that Seahorse did not sell the alleged infringing products; the statute specifically covers the transaction of *any* business within the state. For the same reason, ¶ (5) is satisfied because in its sales to Michigan residents, Seahorse has furnished materials in the state.

Finally, ¶ 2 is satisfied because Seahorse is alleged to have done an act - trademark infringement - the consequence of which is felt in Michigan by the Plaintiff, a Michigan corporation. *See Ford Motor Co. v. Great Domains, Inc.*, 141 F. Supp. 2d 763, 771 (E.D.

Mich. 2001) ("Ford maintains its headquarters in the State of Michigan and thus is injured in Michigan when its trademarks are misappropriated by others….").

The critical question is whether asserting personal jurisdiction over Seahorse would satisfy constitutional due process. In *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 680 (6th Cir. 2012), the Sixth Circuit articulated a three-part test for determining whether due process is met:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

### a. Purposeful Availment

The mere posting of a website that can be accessed anywhere in the world does not by itself establish purposeful availment. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002) ("The level of contact with a state that occurs simply from the fact of a website's availability on the Internet is therefore an "attenuated" contact that falls short of purposeful availment.") (citing *Bensusan Rest. Corp. v. King,* 937 F. Supp. 295, 300 (S.D.N.Y. 1996)). In *Bensusan*, the Court differentiated a non-interactive website (which would not support a finding of purposeful availment) from an interactive website that places a product in the stream of commerce. *See also McGill v. Gourmet Technologies, Inc.,* 300 F.Supp.2d 501 (E.D.Mich.2004) (a "passive website is insufficient to establish purposeful availment for the purpose of due process.").

In *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), the Court described a "sliding scale" that would inform the question of when a website crosses the line into purposeful availment:

> This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

(Internal citations omitted).

The *Zippo* Court held that maintaining a website can constitute purposeful availment "if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Id*. "In the internet context, the interactivity of the website determines whether personal jurisdiction is appropriate for an out of state defendant." *Audi AG and Volksvagon of America, Inc. v. D'Amato*, 341 F. Supp. 2d 734, 742 (E.D. Mich. 2004).

The present case falls within *Zippo's* middle ground. The Seahorse website is clearly interactive, and it is therefore necessary to examine the level and nature of the interactivity. Seahorse stresses that the actual sales of any of its products in Michigan is minimal, and that it has not sold any of the allegedly infringing products in Michigan. But

14

while the volume of sales may be one factor to consider, it is not a dispositive factor. *See, e.g. Audi AG,* 341 F. Supp. 2d at 744–45 (finding purposeful availment even though "Plaintiffs cannot point to a single transaction consummated in Michigan."); *see also CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1996) ("Further, we must reject the district court's reliance on the *de minimis* amount of software sales which Patterson claims he enjoyed in Ohio. As this court recently stated, "It is the 'quality' of [the] contacts," and not their number or status, that determines whether they amount to purposeful availment.")(quoting *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1119 (6th Cir. 1994)).

What is more significant are the following aspects of the Seahorse website: (1) it describes the products, including the price and photographs; (2) it puts the products into the "stream of commerce" by offering them for sale; (3) it provides the mechanism for Michigan consumers to purchase the items online through a variety of payment options, and provides that the items will be shipped to Michigan consumers; (4) it has a section labeled "**CONTACT US**," in boldface type, giving Michigan consumers the means to interactively contact Seahorse with questions, both by telephone and email, and enables consumers to provide their own email contact information, along with a narrative of their questions or concerns; (5) it provides a link to information as to how to request refunds.

In *Audi AG*, 341 F. Supp. 2d at 744-45, the Court found that offering allegedly infringing products for sale on an interactive website was sufficient to establish personal jurisdiction:

There are two key reasons why the Court finds that *audisport.com* is an interactive website. First, the website was sufficiently interactive because it offered to sell goods. Secondly, the goods sold on the website allegedly infringed upon Plaintiffs' trademarks who principally reside in Michigan. These two factors are sufficient to find sufficient interactivity and purposeful availment in Michigan.

In *Sports Auth. Michigan, Inc. v. Justballs, Inc.*, 97 F. Supp. 2d 806, 814 (E.D. Mich. 2000), the Court found purposeful availment where the defendant's website provided a level of interactivity similar to Seahorse's:

> From the record before this Court, it is evident that Justballs' web site does more than advertise on the internet. It appears that Justballs' products are sold primarily through its web site. It is uncontroverted that Justballs does not operate at any retail stores. Justballs' site provides information about itself and its products. Justballs' site also enables customers to contact them from the site via e-mail. Additionally, customers can purchase products online via Justballs' "virtual" store: Customers can search the site for specific products or "browse" through the categories of merchandise on the site; place items in a virtual shopping cart; view descriptions, prices and pictures of products; view items previously placed in the shopping cart; purchase products at the "checkout counter" by providing credit card and shipping information; and track the status of any previous orders.

*Sports Authority* cited *Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074 (C.D. Cal. 1999).

In *Stomp*, the Court found that the "commercial nature" of the defendant's website pushed it into the zone of purposeful availment:[2]

> In the instant case, the nature of NeatO's website is highly commercial. Although NeatO's website provides information about the company, customer service, and technical support, a substantial portion of the site is dedicated to allowing the consumer to purchase NeatO's products on-line.[7] NeatO's on-line sales constitutes conducting business over the Internet, and therefore under the test enumerated in *Zippo,* 952 F. Supp. at 1124, asserting personal jurisdiction comports with due process.

---

[2] *Stomp* found purposeful availment even though the number of sales in the State of California was small. ("Although the actual number of sales to California citizens may be small, the critical inquiry in determining whether there was a purposeful availment of the forum state is the quality, not merely the quantity, of the contacts."). *Id*. at 1078 (citing *CompuServe*).

16

*Id.* at 1078.

The Court's description of the defendant's website in *Stomp* mirrors Seahorse's website:

> NeatO's website operates in many ways as a "virtual store." Consumers can view descriptions, prices, and pictures of various products. Consumers can add items to their "virtual shopping cart" and "check out" by providing credit card and shipping information.

*Id.* at 1078 n.7.

Because of the "highly commercial" nature of Seahorse's website and the level of interactivity it provides, I suggest that Seahorse purposefully availed itself "of the privilege of acting in" Michigan.

### b. Defendant's Activities in the Forum State

Under the second prong of the *Miller* test, the cause of action must arise from the defendant's activities in the forum state. Here, the cause of action, trademark infringement against a Michigan company's product, arises from Seahorse's maintenance of a website that solicits and provides a mechanism for Michigan consumers to purchase its allegedly infringing products. It should also be noted that the State of Michigan is bordered by three Great Lakes, Lake Sinclair, the Detroit river, and it contains numerous inland lakes. Boating is a major recreational activity in Michigan, making nautical related products particularly attractive to its residents. PSI Marine, through its owner, Mark Baluha, domiciled in Michigan, is the trademark owner and sole licensee of the TIDESLIDE mark, and "[i]njury from trademark infringement occurs in the state where the trademark owner

17

resides." *Sports Authority*, 97 F. Supp. 2d at 815. The second prong of *Miller* has been established.

### c. The Exercise of Jurisdiction is Reasonable and Would Not Offend Due Process

As to the third *Miller* prong, "[w]here the first two elements of the test for personal jurisdiction are met, there is an inference that the exercise of jurisdiction is reasonable." *Audi AG*, 341 F. Supp. 2d at 748 (quoting *CompuServe*, 89 F.3d 1257, 1268). "When the first two factors are met, there is an inference that the third factor is met, and only the unusual case will not satisfy the third factor." *Lyman Steel Corp. v. Ferrostaal Metals Corp.*, 747 F. Supp. 389, 396 (N.D. Ohio, 1990) (citing *Third Nat. Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1092 (6th Cir. 1989)). In *Audi AG*, the Court found as follows:

> Michigan has a strong interest in protecting companies that principally reside here against trademark infringement. The Court also finds that Plaintiffs have a strong interest in obtaining relief. The Court finds that Plaintiffs'[] interest in obtaining relief, coupled with Michigan's interest in protecting companies that reside there, significantly outweighs whatever burden may be placed upon Defendant in having to defend this action in Michigan.

So too in the present case, PSI Marine has the same strong interest in obtaining relief, which, coupled with the state's interest in protecting Michigan companies against trademark infringement, outweighs any burden placed on Seahorse in defending this case in Michigan. The exercise of personal jurisdiction is reasonable.

Because Plaintiff PSI Marine has met its burden of establishing a prima facie showing personal jurisdiction under both Michigan's long-arm statute and considerations

18

of due process, Defendant Seahorse's motion to dismiss under Rule 12(b)(2) should be denied.

### III. CONCLUSION

For these reasons, I **RECOMMEND** that the Court **DENY** Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(2) (ECF No. 9).

### IV. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file

a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 1, 2022                                       S/ PATRICIA T. MORRIS
                                                           Patricia T. Morris
                                                           United States Magistrate Judge