# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

PSI Marine, Inc.,

                Plaintiff,        Case No. 22-cv-10611

v.                             Judith E. Levy
                             United States District Judge

Seahorse Docking LLC,

                      Mag. Judge Patricia T. Morris

                Defendant.

_____/

# OPINION AND ORDER GRANTING IN PART DEFENDANT'S OBJECTIONS [16] AND ADOPTING IN PART THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [15]

In this trademark infringement case, Defendant Seahorse Docking LLC submitted three objections (ECF No. 16) to Magistrate Judge Patricia T. Morris' Report and Recommendation ("R&R"). (ECF No. 15.) The R&R recommends the Court deny Defendant's motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(2). (ECF No. 9.) Plaintiff PSI Marine, Inc. filed a response opposing the objections (ECF No. 17), and Defendant filed a reply. (ECF No. 18.) For the reasons set forth below, Defendant's first objection is GRANTED, Defendant's

remaining objections are DENIED AS MOOT, the R&R (ECF No. 15) is ADOPTED IN PART, and Defendant's motion to dismiss (ECF No. 9) is GRANTED.

## I.     Background

The factual and procedural background set forth in the R&R is fully adopted as though set forth in this Opinion and Order.

## II.    Legal Standard

A party may object to a magistrate judge's report and recommendation on dispositive motions, and a district judge must resolve proper objections under a de novo standard of review. *See* 28 U.S.C. § 636(b)(1)(B)–(C); Fed. R. Civ. P. 72(b)(1)–(3). "For an objection to be proper, Eastern District of Michigan Local Rule 72.1(d)(1) requires parties to 'specify the part of the order, proposed findings, recommendations, or report to which [the party] objects' and to 'state the basis for the objection.'" *Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 346 (6th Cir. 2018). Objections that restate arguments already presented to the magistrate judge are improper, *see Coleman-Bey v. Bouchard*, 287 F. App'x 420, 422 (6th Cir. 2008) (citing *Brumley v. Wingard*, 269 F.3d 629, 647 (6th Cir. 2001)), as are those that are vague

and dispute the general correctness of the report and recommendation, *see Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

Moreover, objections must be clear so that the district court can "discern those issues that are dispositive and contentious." *Id.* (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (explaining that objections must go to "factual and legal" issues "at the heart of the parties' dispute"). In sum, the objections must be clear and specific enough to permit the Court to squarely address them on the merits. *See Pearce*, 893 F.3d at 346.

### III.   Analysis

The R&R recommends denying Defendant's motion to dismiss, in which Defendant seeks dismissal of the complaint under Rule 12(b)(2) for lack of personal jurisdiction. "Personal jurisdiction falls into two categories: general and specific." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 501 (6th Cir. 2020) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011)). The R&R concludes that Plaintiff does not establish the existence of general jurisdiction. (*See* ECF No. 15, PageID.136–137.) With respect to specific jurisdiction, the

R&R concludes that Plaintiff "has met its burden of establishing a prima facie showing [of] personal jurisdiction under both Michigan's long-arm statute and considerations of due process." (*Id.* at PageID.144–145.) As a result, the R&R recommends the denial of Defendant's motion to dismiss under Rule 12(b)(2). (*See id.* at PageID.145.)

Defendant agrees with the R&R's finding "that general jurisdiction does not exist." (ECF No. 16, PageID.150 ("The Magistrate [Judge] correctly found that general jurisdiction does not exist.").) Defendant indicates that it "only objects to the portion of the Report and Recommendation [ECF No. 15, PageID.137-145] finding that the Court may exercise specific jurisdiction over the Defendant."[1] (ECF No. 16, PageID.150.)

---

[1] Given that Defendant "only objects" to the portion of the R&R that addresses specific jurisdiction (ECF No. 16, PageID.150), there is no objection to the R&R's recommendation that the Court decide Defendant's motion without a hearing or without allowing discovery. (*See* ECF No. 15, PageID.134.) The Court therefore adopts the R&R's suggested approach to handling Defendant's motion to dismiss. Because the motion is decided without a hearing and without discovery, the Court declines to adopt the portion of the R&R's "Legal standards" section that applies when a hearing is conducted or discovery is allowed by the Court. (*Id.* at PageID.133–134.) This portion of the R&R is appreciated but is not necessary for ruling on Defendant's motion.

Defendant's objections relate to the R&R's constitutional due process analysis for specific jurisdiction. In its first and second objections, Defendant challenges the portion of that analysis that considers the "purposeful availment" requirement. (*See id.* at PageID.151–156.) In its third objection, Defendant objects to the R&R's analysis of a different due process requirement: that the cause of action arise from the defendant's activities in the forum state. (*See id.* at PageID.156–159.)

The Court finds that Defendant's first objection has merit, as discussed below. Therefore, the Court grants the objection. Because this ruling on Defendant's first objection is dispositive, the Court finds it unnecessary to address the second and third objections.

## A. The Constitutional Due Process Analysis for Specific Jurisdiction

"An exercise of specific jurisdiction is proper where the claims in the case arise from or are related to the defendant's contacts with the forum state." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (citing *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997)). This court has stated that

> "[w]here a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists 'if the defendant is

amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process.'"[2] *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002).

*Borke v. Warren*, No. 20-cv-12774, 2022 WL 525839, at *2 (E.D. Mich. Feb. 22, 2022) (first alteration added); *see Lifestyle Lift Holding Co. v. Prendiville*, 768 F. Supp. 2d 929, 932 (E.D. Mich. 2011).

Regarding the due process component, "the Due Process Clause requires that the defendant have sufficient 'minimum contact[s]' with the forum state so that finding personal jurisdiction does not 'offend traditional notions of fair play and substantial justice.'" *Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012) (alteration in original) (quoting *Third Nat'l Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). The Sixth Circuit applies

> "a three-part test to determine whether the exercise of personal jurisdiction . . . comports with constitutional due process." *AlixPartners*, 836 F.3d at 549. "First, the defendant must *purposefully avail* himself of the privilege of acting in the forum state or causing a consequence in the forum state."

---

[2] The R&R states that "[i]n *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012), the Sixth Circuit held that '[f]or specific jurisdiction to exist in a diversity case, two factors must be satisfied: the forum state long-arm statute, and constitutional due process.'" (ECF No. 15, PageID.137.) In this trademark infringement case brought under the Lanham Act (in which jurisdiction is not based on diversity), the same factors must be satisfied, as set forth above.

*Id.* (emphasis in original) (quoting *Air Prods.*, 503 F.3d at 550). Second, the claims "'must arise out of or relate to the defendant's contacts' with the forum." *Ford*, 141 S. Ct. at 1025 (quoting *Bristol-Myers*, 137 S. Ct. at 1780); *see also AlixPartners*, 836 F.3d at 549. Third, "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *AlixPartners*, 836 F.3d at 549–50 (quoting *Air Prods.*, 503 F.3d at 550).

*Sullivan v. LG Chem, Ltd.*, No. 22-1203, 2023 WL 5286965, at *12 (6th Cir. Aug. 17, 2023). The Sixth Circuit "views the purposeful availment prong . . . as 'essential' to a finding of personal jurisdiction." *Intera Corp.*, 428 F.3d at 616 (quoting *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000)).

## B. Defendant's First Objection

In its first objection, Defendant argues that the R&R's analysis of purposeful availment is flawed because it "does not go beyond examining the interactivity and commercial nature of Defendant's website and fails to consider whether 'something more' demonstrates purposeful availment, which is absent in the present case." (ECF No. 16, PageID.153.) Defendant argues that "the operation of a commercial website alone is insufficient to support specific jurisdiction over an out-

of-state defendant and that 'something more' is necessary to satisfy the 'purposeful availment' requirement of due process." (*Id.* at PageID.152 (internal citations omitted).) According to Defendant, "[t]hat 'something more' is absent" here. (*Id.*) The Court agrees with Defendant that the R&R's analysis of purposeful availment is deficient.

### i.   *Websites and Personal Jurisdiction*

The standard for evaluating whether a website provides a basis for exercising personal jurisdiction stems from a 1997 decision from the Western District of Pennsylvania: *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). In *Zippo*, the court "identified three categories of websites that should be placed on a 'sliding scale'" to "help determine the 'likelihood that personal jurisdiction can be constitutionally exercised' over the owner of a website." 4A Charles Alan Wright et al., *Fed. Prac. & Proc. Civ.* § 1073 (4th ed. 2023) (quoting *Zippo*, 952 F. Supp. at 1124). The court found that

> the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into

contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. *E.g. CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996). At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. *E.g. Bensusan Restaurant Corp., v. King*, 937 F. Supp. 295 (S.D.N.Y. 1996). The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. *E.g. Maritz, Inc. v. Cybergold, Inc.*, 947 F. Supp. 1328 (E.D. Mo. 1996).

*Zippo*, 952 F. Supp. at 1124 (footnote omitted).

In *Neogen Corp. v. Neo Gen Screening, Inc.*, "the Sixth Circuit adopted the *Zippo* 'sliding scale' framework to determine when a defendant's online activities constitute purposeful availment." *NOCO Co. v. Shenzhen Valuelink E-Com. Co.*, 550 F. Supp. 3d 488, 495 (N.D. Ohio 2021) (citing *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002)). Under *Neogen*, "[a] defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with

residents of the state." *Neogen*, 282 F.3d at 890 (citing *Zippo*, 952 F. Supp. at 1124).

"'[P]urposeful availment' is something akin to a deliberate undertaking to do or cause an act or thing to be done in [the forum state] or conduct which can be properly regarded as a prime generating cause of the effects resulting in [the forum state], something more than a passive availment of [the forum state's] opportunities." *Id.* at 891 (quoting *Khalaf v. Bankers & Shippers Ins. Co.*, 404 Mich. 134, 153–54 (1978)). "The Sixth Circuit has expressed caution in relying on the existence of [a] website as evidence of purposeful availment." *Fruit of the Loom, Inc. v. En Garde, LLC*, No. 1:17-CV-00112-GNS-HBB, 2017 WL 3671322, at *4 (W.D. Ky. Aug. 25, 2017) (citing *Neogen*, 282 F.3d at 890). This court has noted that the *Zippo* and *Neogen* courts found purposeful availment in those cases because of "the actual contact the defendant had with the forum state through the website, [and] not the mere existence of the website, which 'by its very nature can be accessed internationally.'" *Tech & Goods, Inc. v. 30 Watt Holdings, LLC*, No. 2:18-CV-13516, 2019 WL 3777060, at *3 (E.D. Mich. Aug. 12, 2019) (quoting *Neogen*, 282 F.3d at 890–91; citing *Zippo*, 952 F. Supp. at 1124).

10

In *Zippo*, the court determined that

> the defendant manifested its purposeful availment of the
> privilege of acting in Pennsylvania when it "repeatedly and
> consciously chose to process Pennsylvania residents'
> applications and to assign them passwords," knowing that the
> result of these Internet contacts would be to perform services
> for Pennsylvania customers in part through the transmission
> of electronic messages to Pennsylvania. *Id*. at 1126. Such
> intentional interaction with the residents of a forum state, the
> *Zippo* court concluded, is evidence of a conscious choice to
> transact business with inhabitants of a forum state in a way
> that the passive posting of information accessible from
> anywhere in the world is not. *Id*.

*Neogen*, 282 F.3d at 890.

In *Neogen*, the defendant was a Pennsylvania corporation with "its
sole place of business in Pittsburgh." *Id*. at 886. The defendant
"perform[ed] diagnostic testing of blood samples from newborn infants."
*Id*. Its "only continuous advertising [wa]s through its website," which
"provide[d] information about [its] services, list[ed] the e-mail addresses
of personnel, and allow[ed] prospective customers to print blood-
collection forms to be mailed along with blood samples to Pittsburgh." *Id*.
at 887. The Sixth Circuit determined that

> [t]he maintenance of [the defendant's] website, in and of itself,
> does not constitute the purposeful availment of the privilege
> of acting in Michigan. An Internet website by its very nature

11

can be accessed internationally. By maintaining a website in Pennsylvania, [the defendant] is no more benefitting from the laws of Michigan than from the laws of any other state. The level of contact with a state that occurs simply from the fact of a website's availability on the Internet is therefore an "attenuated" contact that falls short of purposeful availment.

*Id.* at 890.

Turning to the defendant's interactions with Michigan residents, the *Neogen* court found that the defendant's website "consists primarily of passively posted information" (such as the advertising of services and the providing of basic contact information) but that "[s]everal aspects of the website . . . support a finding of purposeful availment." *Id.* For instance,

> [w]hen Michigan residents purchase [the defendant's] services . . . [the defendant] provides them with passwords to access their test results on the website from Michigan. The granting of passwords to Michigan residents as part of a contract for [the defendant's] services is an interactive usage showing that [the defendant] has intentionally reached out to Michigan customers and enabled them to use [the defendant's] services from Michigan. Another aspect of the website that supports purposeful availment, even if passive, is the fact that [the defendant] holds itself out as welcoming Michigan business. On the website, [the defendant] states that it will "do a genetic newborn screening test for any parent in any state," and enables Michigan residents to print out the testing form to send along with payment. [The defendant] also

12

posts on its website a chart showing the "results of screening 4,579 infant deaths with unknown cause," including a geographical breakdown of data that expressly includes Michigan. This chart suggests that [the defendant] has used data collected from Michigan residents to complete this study, and holds itself out as having done so.

*Id.* at 890–91.

The Sixth Circuit ultimately did not decide the "close question" of whether the *Neogen* defendant's "website alone would be sufficient to sustain personal jurisdiction in Michigan . . . because [the defendant's] website [wa]s not its only contact with the state." *Id.* at 891. The Sixth Circuit indicated that "[t]he website must be considered alongside [the defendant's] other interactions with Michigan residents. Most significantly, when potential customers from Michigan have contacted [the defendant] to purchase its services, [the defendant] has welcomed their individual business on a regular basis." *Id.* The court determined that the defendant—which had approximately fourteen yearly contracts with Michigan customers—"reasonably expects to conduct a given level of business in Michigan year after year." *Id.* The court therefore found that the plaintiff "presented a prima facie case that [the defendant] has shown its intent to maintain continuing relationships and obligations in

Michigan, . . . , such that its activities there are continuous and systematic." *Neogen*, 282 F.3d at 891 (internal citations and quotation marks omitted).

Moreover, the Sixth Circuit rejected the district court's conclusion that the defendant's "14 yearly contracts with Michigan customers were insufficient to establish personal jurisdiction over [the defendant] because they represented an insignificant percentage of [the defendant's] overall business." *Id.* The court of appeals stated that "[t]he proper test for personal jurisdiction is not based on a 'percentage of business' analysis . . . , but rather on whether the absolute amount of business conducted by [the defendant] in Michigan represents something more than 'random, fortuitous, or attenuated contacts' with the state." *Id.* at 891–92 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

The *Neogen* court concluded that the allegations of the plaintiff in that case

> constitute a prima facie showing that [the defendant's] contacts with Michigan customers are more than random or fortuitous events. Although customers from Michigan contacted [the defendant], and not the other way around, [the defendant] could not mail test results to and accept payment

from customers with Michigan addresses without intentionally choosing to conduct business in Michigan. This establishes that [the defendant] chose to contract with customers from Michigan. Additionally, a part of [the defendant's] service is the packaging of the results of the tests that it performs. When [the defendant] mails these test results to its Michigan customers, or sends them a password to be used interactively on its website, [the defendant] reaches out to Michigan to perform its services there. [The plaintiff] has therefore alleged facts which, when viewed in the light most favorable to [the plaintiff], support a finding that [the defendant] purposefully availed itself of the privilege of doing business in Michigan.

*Id.* at 892.

Published Sixth Circuit cases post-*Neogen* apply its rule that "[i]n this Circuit, 'operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state . . . "if the website is interactive to a degree that reveals specifically intended interaction with residents of the state.""" *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 483–84 (6th Cir. 2003) (quoting *Bird*, 289 F.3d at 874 (quoting *Neogen*, 282 F.3d at 890)). Thus, the Court must apply the rule articulated in *Neogen* as well.

*ii.    The R&R's Findings on Purposeful Availment*

In this case, the R&R discusses *Zippo*'s "sliding scale" in its analysis of purposeful availment. (ECF No. 15, PageID.140.) The R&R finds that "[t]he present case falls within *Zippo*'s middle ground. [Defendant's] website is clearly interactive, and it is therefore necessary to examine the level and nature of the interactivity." (*Id.*) The R&R states that "the volume of sales . . . is not a dispositive factor" and that

> [w]hat is more significant are the following aspects of [Defendant's] website: (1) it describes the products, including the price and photographs; (2) it puts the products into the "stream of commerce" by offering them for sale; (3) it provides the mechanism for Michigan consumers to purchase the items online through a variety of payment options, and provides that the items will be shipped to Michigan consumers; (4) it has a section labeled "**CONTACT US**," in boldface type, giving Michigan consumers the means to interactively contact [Defendant] with questions, both by telephone and email, and enables consumers to provide their own email contact information, along with a narrative of their questions or concerns; (5) it provides a link to information as to how to request refunds.

(*Id.* at PageID.141.) After quoting language from three cases—two from this district and one from the Central District of California[3]—the R&R

---

[3] The three cases the R&R quotes language from are: (1) *Audi AG & Volkswagon of Am., Inc. v. D'Amato*, 341 F. Supp. 2d 734 (E.D. Mich. 2004), (2) *Sports*

concludes that Defendant "purposefully availed itself 'of the privilege of acting in' Michigan" due to "the 'highly commercial' nature of [Defendant's] website and the level of interactivity it provides." (*Id.* at PageID.143.)

The R&R cites to *Neogen* in the beginning of its section on purposeful availment. (*See id.* at PageID.137.) Yet it is unclear whether the R&R considers *Neogen*'s rule that "[a] defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen*, 282 F.3d at 890 (citing *Zippo*, 952 F. Supp. at 1124). The Court notes that out of the three district court cases the R&R quotes language from in its purposeful availment analysis, one case makes no mention of *Neogen* and the remaining two pre-date that 2002 Sixth Circuit case. (*See* ECF No. 15, PageID.142.) As a result, the Court applies *Neogen* to this case in the analysis that appears below.

---

*Auth. Mich., Inc. v. Justballs, Inc.*, 97 F. Supp. 2d 806 (E.D. Mich. 2000), and (3) *Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074 (C.D. Cal. 1999). (*See* ECF No. 15, PageID.141–143.)

  *iii.* *Application of the Sixth Circuit's* Neogen *Rule to This Case*

Applying *Neogen*, the Court finds that Plaintiff fails to show that Defendant's website "is interactive to a degree that reveals specifically intended interaction with residents of [Michigan]." *Neogen*, 282 F.3d at 890. Therefore, Plaintiff does not demonstrate that Defendant purposefully availed itself of the privilege of acting in Michigan through its website.

According to Plaintiff's complaint and the declaration of Mark Baluha, a principal owner of Plaintiff, Defendant's website (1) advertises Defendant's products, (2) provides product pricing and descriptions, (3) "offers certain products for sale to the general public within the United States, including in this District," (4) provides Defendant's phone number, and (5) has a "Contact Us" page with spaces for members of the public to enter their "Name," "Email," and "Message." (ECF No. 1, PageID.4, 9, 11; *see* ECF No. 13, PageID.101–102, 104–115.) Members of the public can search for and buy Defendant's products, and they can "arrange for shipping of the purchased product(s) through an interactive shopping cart feature." (ECF No. 1, PageID.4; *see* ECF No. 13, PageID.101–102.) In addition, individuals who visit Defendant's website

are "invite[d]" to "'Join the club' by entering their email address" and "to follow Defendant on social media." (ECF No. 13, PageID.102.)

Viewing these facts regarding Defendant's website in a light most favorable to Plaintiff, the Court cannot conclude that Defendant purposefully availed itself of the privilege of doing business in Michigan. This court has noted that "[b]oth the Sixth Circuit and the lower courts appear to agree 'that more than mere accessibility from the forum is required to establish the type of "deliberate" conduct that constitutes purposeful availment.'" *Wicked Grips LLC v. Badaan*, No. 20-12773, 2021 WL 3783068, at *4 (E.D. Mich. July 21, 2021) (quoting *Cap. Confirmation, Inc. v. Auditconfirmations, LLC*, No. 3:09-0412, 2009 WL 2823613, at *6 (M.D. Tenn. Aug. 28, 2009); citing *Bird*, 289 F.3d at 865; *Impulsaria, LLC v. United Distribution Grp., LLC*, No. 1:11-CV-1220, 2012 WL 4341058, at *3 (W.D. Mich. Sept. 20, 2012)), *report and recommendation adopted*, No. 20-cv-12773, 2021 WL 3773189 (E.D. Mich. Aug. 24, 2021). Here, Plaintiff does not make a prima facie showing that Defendant—through its website—intentionally reached out to Michigan customers, "h[eld] itself out as welcoming Michigan business," or deliberately interacted with Michigan residents on a regular basis

(beyond "random or fortuitous events"). *Neogen*, 282 F.3d at 890–92. Moreover, there is no indication that Defendant's website possesses characteristics that the Sixth Circuit in *Neogen* identified as "support[ing] a finding of purposeful availment" with respect to the website at issue in that case: (1) "[t]he granting of passwords to Michigan residents as part of a contract for [the defendant's] services," (2) the assertion that the defendant will serve individuals "in any state," and (3) the displaying of a chart containing "a geographical breakdown of data that expressly includes Michigan." *Id.* at 890–91.

Baluha states in his declaration that Defendant's website "does not in any way restrict the sale of its goods geographically" and that the website "evidences a willingness and capability of providing goods to residents of Michigan." (ECF No. 13, PageID.102.) But these facts, without more, do not establish that Defendant intentionally directed its activity toward Michigan residents or that it consciously chose to transact business with them. *See Neogen*, 282 F.3d at 891 ("[The district court] properly rejected [the plaintiff's] contention that [the defendant] 'must manifest a desire to not do business in Michigan,'" given that purposeful availment "is something akin to a deliberate undertaking to

20

do or cause an act or thing to be done in Michigan."). "[T]he fact that [Defendant is] willing to sell to Michigan residents is not sufficient to establish jurisdiction—this fact does not equate to 'specifically intended interactions' with Michigan residents." *Wicked Grips*, 2021 WL 3783068, at *5. "[S]imply maintaining a website that performs a commercial function available to residents of the forum state is not purposeful availment." *Id.* at *4. "Although an Internet website by its very nature can be accessed internationally, by maintaining a website, Defendant is no more benefitting from the laws of Michigan than from the laws of any other state." *Roberts v. Paulin*, No. 07-CV-13207, 2007 WL 3203969, at *6 (E.D. Mich. Oct. 31, 2007).

Unlike the plaintiff in *Neogen*—in which the Sixth Circuit determined that the defendant's website was "not its only contact" with Michigan and that the defendant "reasonably expects to conduct a given level of business in Michigan year after year," *Neogen*, 282 F.3d at 891— Plaintiff does not present factual allegations or information that demonstrate that Defendant has repeated or regular contact with Michigan residents. *See id.* at 891–92. As the R&R notes (*see* ECF No. 15, PageID.130), the declaration of Carmen Martocchio—Defendant's

21

owner—that is attached to Defendant's motion to dismiss indicates that "[a]s of April 26, 2022, Defendant . . . sold a total of just two items (i.e., two units) to customers located in the State of Michigan and none of these sales were for the . . . products [at issue in this case]." (ECF No. 9-1, PageID.77.) A document referred to in the declaration as "Appendix 1" identifies the "Date" of the sales as "04/12/2021" and "12/02/2021." (*Id.* at PageID.79.) "Drawing reasonable inferences in Plaintiff's favor, . . . [t]hese sales alone . . . do not constitute website or online sales activity that is 'interactive to a degree that reveals specifically intended interaction with the residents of [Michigan].'" *Wicked Grips*, 2021 WL 3783068, at *5 (quoting *Neogen*, 282 F.3d at 890) (accepting that the defendants "have made more than three sales to Michigan residents" and finding that "[m]ore than a few sales, without more, does not constitute purposeful availment").

In *Bird v. Parsons*, the Sixth Circuit

> conclude[d] that by maintaining a website on which Ohio residents can register domain names and by allegedly accepting the business of 4,666 Ohio residents, [certain] defendants . . . satisfied the purposeful-availment requirement. . . . Although it is unclear whether registrants who use [the] website do so on a repeated basis, the proffered evidence that [a defendant referred to as] Dotster regularly

chooses to do business with Ohio residents is sufficient to constitute purposeful availment.

*Bird*, 289 F.3d at 874–75. In this case, Defendant—which sold two items to Michigan residents in 2021 (*see* ECF No. 9-1, PageID.77, 79)—has not done business with a number close to 4,666 Michigan residents. Thus, *Bird* provides no basis for the Court to conclude that Defendant "regularly chooses to do business with [Michigan] residents" such that it purposefully availed itself of doing business in Michigan. *Bird*, 289 F.3d at 875. Defendant's two sales from two years ago more likely represent "random, fortuitous, or attenuated contacts" with Michigan that are insufficient to constitute purposeful availment. *Neogen*, 282 F.3d at 892 (quoting *Burger King*, 471 U.S. at 475).

Defendant's lack of direct advertising to customers or distributers in Michigan (*see* ECF No. 9-1, PageID.76) further demonstrates that the purposeful availment requirement is not satisfied. *See Wicked Grips*, 2021 WL 3783068, at \*5 (finding that the absence of "direct advertisement or soliciting further distinguishes th[e] case from cases in which the court found purposeful availment through internet activity"). In addition, Martocchio's declaration states that Defendant "does not have any employees who live or regularly work in the State of Michigan"

23

and that Defendant "has not attended any tradeshows or exhibited products in the State of Michigan." (ECF No. 9-1, PageID.75–76.) Plaintiff fails to respond with any evidence that Defendant took overt steps to interact with Michigan residents and purposefully availed itself of this forum. *See Bridgeport Music, Inc.*, 327 F.3d at 478–79 ("The emphasis in the purposeful availment inquiry is whether the defendant has engaged in 'some overt actions connecting the defendant with the forum state.'" (quoting *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1274 (6th Cir. 1998))).

In sum, Plaintiff fails to meet its burden of making a prima facie showing that personal jurisdiction exists. Plaintiff does not show that Defendant "purposefully avail[ed] [it]self of the privilege of acting in [Michigan]," which is required for the Court to exercise specific personal jurisdiction over Defendant. *Means v. U.S. Conf. of Cath. Bishops*, 836 F.3d 643, 649 (6th Cir. 2016) (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). As discussed above, the factual information in the record does not establish that Defendant's website "is interactive to a degree that reveals specifically intended interaction with residents of [Michigan]." *Neogen*, 282 F.3d at 890 (citing *Zippo*, 952 F.

24

Supp. at 1124). Defendant's other interactions with Michigan residents—
two sales of non-infringing products in 2021—also do not establish
purposeful availment, given that these sales are insufficient to
demonstrate that Defendant's "contacts with Michigan customers are
more than random or fortuitous events." *Id.* at 892. There is no indication
that Defendant expects a certain degree of yearly business in Michigan,
*see id.* at 891, or that Defendant "regularly chooses to do business with
[Michigan] residents," *Bird*, 289 F.3d at 875. *See Wicked Grips*, 2021 WL
3783068, at *5 (concluding that the plaintiff "failed to meet its burden of
making a *prima facie* showing of jurisdiction" because the complaint,
affidavits, and other evidence did not "support finding either of the
defendants took any deliberate, specific step to establish a substantial
connection with Michigan"). Because Plaintiff does not make a prima
facie showing that Defendant purposefully availed itself of the privilege
of doing business in Michigan, exercising personal jurisdiction over
Defendant does not comport with due process.

Accordingly, Defendant's first objection is GRANTED, and
Defendant's motion to dismiss (ECF No. 9) is GRANTED.

## IV.   Conclusion

For the reasons set forth above, Defendant's objections (ECF No. 16) are GRANTED IN PART. Defendant's first objection is GRANTED, and its second and third objections are DENIED AS MOOT.

The R&R (ECF No. 15) is ADOPTED IN PART. The Court declines to adopt the portion of the R&R's "Legal standards" section discussed above (*id.* at PageID.133–134), *see supra* note 1, at 4; the portion of the R&R that addresses purposeful availment (ECF No. 15, PageID.139–143); and the R&R's recommendation to deny Defendant's motion. (*Id.* at PageID.127, 145.)

Defendant's motion to dismiss under Rule 12(b)(2) (ECF No. 9) is GRANTED.

IT IS SO ORDERED.

Dated: September 18, 2023          s/Judith E. Levy
       Ann Arbor, Michigan        JUDITH E. LEVY
                                  United States District Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 18, 2023.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager